UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM AYERS                                                                                    PLAINTIFF

vs.                                                           CIVIL ACTION NO. 3:16-CV-572-CRS

TIM ANDERSON, et al.                                                                        DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on second motion for summary judgment by Defendants. DN 58. Plaintiff filed a response. DN 59. This matter is now ripe for adjudication. For the reasons below, Defendants' motion for summary judgment will be granted.

**I. Legal Standard**

Summary judgment is appropriate when the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id*. In undertaking this analysis, the Court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007).

The party moving for summary judgment bears the burden of proof for establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). They can meet this burden by "citing to particular parts of materials in the record" or "showing

that the materials cited do not establish the…presence of a genuine dispute." Fed. R. Civ. P. 56(C)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party also "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## II. Factual Background

Defendants are employees of the Kentucky Department of Corrections, Division of Probation and Parole ("Probation"). DN 7 at 1. William Ayers ("Ayers") was convicted of a felony in the Commonwealth of Kentucky for failing to file state income tax returns. DN 35 at 1. Ayers was sentenced to five years of supervised probation with a variety of conditions, including the payment of court costs, a fine, and the completion of 100 community service hours. DN 35 at 1. Ayers did not comply with the conditions of his probation, and on February 24, 2015, Judge Susan Schultz Gibson of the Jefferson County Circuit Court, Kentucky, set additional deadlines for compliance. DN 30-2 at 1-3. In her order, Judge Gibson also authorized Probation to "impose graduated sanctions pursuant to KRS 439.553 for violation of the conditions of probation." DN 22-1 at 11.

According to the record before the Court, Ayers continued to violate the conditions of his probation. In a "Violation of Supervision Report," dated July 10, 2015, Ayers' probation officer, Tim Anderson ("Anderson"), documented Ayers' failure to pay fines and court costs. DN 22-1 at 6. According to the report, Anderson stated to Ayers that Probation would apply graduated sanctions if Ayers continued to violate the terms of his probation. DN 22-1 at 6. In a "Violation

2

Report with Graduated Sanctions," dated August 13, 2015, Anderson documented Ayers' continued failure to comply with sanctions. DN 30-3 at 1. On that report, Ayers did not initial either of the following statements in the section titled "Initials:"

> \_\_\_\_ I am admitting that I am guilty of each and every violation contained in this form and agree to the recommended graduated sanction(s). For Discretionary Detention, I agree to serve days in custody from _____ to _____.
>
> \_\_\_\_ I am declining imposition of the graduated sanction(s) and request a hearing before the releasing authority.

DN 30-3 at 1. However, Ayers did sign the report less than an inch below the following statement:

> I understand that I have the right to a hearing before the releasing authority and the right to be represented by a lawyer at my hearing, including the right to a Public Defender (at no cost) if I cannot afford to hire a lawyer. I understand the violations set forth above and I hereby state that I do not want and hereby waive my right to have a hearing. I further state that I do not want and hereby waive my right to be represented by a lawyer in this matter. I hereby freely and voluntarily admit violating the conditions of my probation/parole as set forth above. Instead of having a hearing, I hereby agree to accept the above sanctions, as recommended by my Probation and Parole Officer. I also agree to resume compliance with all the terms and conditions of my probation/parole and I further understand that should I violate any of the terms and conditions of my probation/parole or should I fail to abide by the above recommended sanctions that I will be subject to arrest and to revocation of my probation/parole. Other than the sanctions as listed above I have not been promised anything to agree to this waiver and I hereby sign this waiver freely and voluntarily and state that I am not under the influence of alcohol, narcotics or other drugs.

*Id*.

Ayers admits that when he reported to Probation on September 15, 2015, he "actually was in violation of probation…for not completing Community Service on time despite a good faith effort." DN 59 at 2. Anderson "offered the graduated sanction of 30 days of electronic monitoring due to non completion of community service hours as court ordered" but "Mr. Ayers refused the graduated sanction that was offered." DN 22-1 at 7. Ayers alleges that, at this point in the meeting, Anderson and another probation officer "grab[ed] Plaintiff without his permission, and twisted his arms behind his back and placed hand-cuffs on his wrists, and pushed him down onto a chair

3

causing pain and humiliation." DN 1-1 at 1. Ayers was arrested and detained on a probation violation detainer. DN 22-1 at 7. Ayers remained in custody until September 23, 2015, when he appeared before Judge Gibson and was released. DN 30-4 at 1. On October 21, 2015, Ayers appeared before Judge Gibson for a revocation hearing. DN 30-5 at 1. Judge Gibson found that the nine days Ayers spent in custody on detainer satisfied the graduated sanctions and ordered him to complete the remaining 42 hours of community service of his sentence within 90 days. DN 30-5 at 1.

**III. Procedural History**

Ayers, appearing *pro se*, filed a complaint in this Court on Sep 8, 2016 against Defendants Tim Anderson, Bob Rodriguez, and unnamed Defendants John Doe and Jane Doe. DN 1 at 1. In his complaint, Ayers made the following claims based on his detention beginning September 15, 2015: Fourth Amendment unreasonable search and seizure, Fourteenth Amendment due process, Eighth Amendment cruel and unusual punishment, false imprisonment,[1] extreme emotional distress, defamation per se, assault and battery. On March 22, 2018, this Court dismissed Plaintiff's Fourth Amendment and Fourteenth Amendment claims. DN 38. On July 24, 2019, Defendants filed a second motion for summary judgment on Plaintiff's remaining claims except for assault and battery. DN 58.

**IV. Discussion**

Plaintiff's remaining claims are as follows: Eighth Amendment cruel and unusual punishment, false imprisonment, extreme emotional distress, defamation per se, assault and battery. The Court will address each claim.

---

[1] In addition to false imprisonment, Plaintiff also claims false arrest. As Kentucky law does not distinguish between false arrest and false imprisonment, the Court will address both the "false arrest" and "false imprisonment" claims under the title of false imprisonment. *Lexington-Fayette Urban County Government v. Middleton*, 555 S.W.2d 613, 619 (Ky. App. 1977).

4

### A. Eighth Amendment Cruel and Unusual Punishment

Ayers argues that his nine-day detainer amounted to cruel and unusual punishment in violation of the Eighth Amendment because "[a]n arrest was not authorized by the graduated sanctions, much less a maximum 9 days detainer." DN 59 at 1. According to Ayers, the nine-day detainer is the "gravamen of plaintiff's complaint" and the "basis for plaintiff's claim that Anderson acted with MALICE." DN 59 at 1 (emphasis in original). By his own admission then, Ayers' eighth Amendment claim hinges on the alleged illegality of his detention.[2] Ayers' argument is without merit because (1) this Court already issued summary judgment based on qualified immunity for constitutional claims arising out of Ayers' detention and (2) to the extent that any claims based on Ayers' detention survive qualified immunity, the detention itself was authorized by law.

### 1. Qualified Immunity

On March 22, 2018, this Court granted summary judgment on Defendants' Fourth Amendment and Fourteenth Amendment constitutional claims under the theory of qualified immunity. *Id*. at 6. The Court stated "even if the Defendants failed to comply with all of the statutory and regulatory provisions regarding the implementation of graduated sanctions, the Plaintiff has not met his burden of showing that his arrest or detainment violated his clearly established constitutional rights." DN 37 at 7. Now, Ayers repackages the same failed Fourth and Fourteenth Amendment claims as a "new" claim of cruel and unusual punishment under the Eighth Amendment. Defendants are immune from suit on Plaintiff's Eighth Amendment claim for the same reason they were immune from suit for Plaintiff's Fourth and Fourteenth Amendment claims:

> Ayers has not cited to, and this court is not aware of, any Kentucky precedent concerning whether a probation officer's imposition of graduated sanctions under

---

[2] To the extent that Ayers bases his complaint on the conditions of his confinement, as opposed to the confinement itself, his argument is also without merit because probation officers are not responsible for jail conditions.

5

the administrative regulations, particularly when a court has authorized Probation to use graduated sanctions and the probationer has waived his right to a revocation hearing, can result in a deprivation of constitutional rights.

*Id.* at 37.

### 2. Authorization by Law

Even if Ayers' Eighth Amendment claim could survive Defendants' qualified immunity as a separate cognizable claim, the claim fails because his arrest and detention were authorized by law. On February 24, 2015, Judge Gibson entered an order recognizing that Ayers violated conditions of his probation by failing to pay fees and fines, perform community service, and provide verification of his compliance with state and federal tax laws. DN 30-2 at 1-3. The court ordered that "Probation and Parole may impose graduated sanctions pursuant to KRS 439.553 for violation of the conditions of probation." *Id.* at 3. Kentucky Revised Statute 439.553 authorizes "the department supervising the individual" to "impose graduated sanctions adopted by the department for violations of the conditions of community supervision" in accordance with KRS 439.3108.

Ayers admits he "actually was in violation of probation" when he reported to Anderson on or about September 15, 2015. DN 59 at 2. Anderson was thus authorized to impose graduated sanctions in accordance with KRS 439.3108, which states, in relevant part:

> (1) Notwithstanding any administrative regulation or law to the contrary, including KRS 439.340(3)(b), the department or board may:
>
> (a) Modify the conditions of community supervision for the limited purpose of imposing graduated sanctions;
>
> (b) Place a supervised individual who is on probation who violates the conditions of community supervision in a state or local correctional or detention facility or residential center for a period of not more than ten (10) days consecutively, and not more than sixty (60) days in any one (1) calendar year.

Ayers alleges Anderson did not have the authority to detain Ayers because Anderson did not administer graduated sanctions in accordance with 501 KAR 6:250, a Kentucky State regulation. DN 35 at 4. Ayers' argument is without merit for two reasons. First Anderson did comply with 501 KAR 6:250 when he detained Ayers. Second, even if Anderson did not comply with 501 KAR 6:250, Anderson was independently and statutorily authorized by KRS 439.3108 to detain Ayers for up to ten days.

### a. 501 KAR 6:250

Kentucky Administrative Regulation Title 501 is a state regulation that recommends appropriate graduated sanctions when "the sentencing court orders the offender to be subject to graduated sanctions as part of the conditions of his probation." 501 KAR 6:250, § 2. To guide officers in the application of graduated sanctions, Section Five of 501 KAR 6:250 includes a matrix outlining a recommended range of sanctions based on the offender's risk level and the violation (or violations) observed. The lowest risk level listed is for probationers with an "administrative risk." *Id*. According to the matrix, Probation may choose a graduated sanction from "Response Range 2" for offenders with an administrative risk who have committed three or more minor violations. *Id*. Response Range 2 includes discretionary detention for up to ten days with supervisor approval.[3] *Id*. Minor violations include non-payment of fines and non-compliance with community service obligations. *Id*. The record indicates that at the time of Ayers' detention, he had been found in minor violation of his probation at least four times: (1) on February 24, 2015 when the Jefferson Circuit Court found Ayers was not in compliance with the terms of his

---

[3] In his initial complaint, Ayers does not allege Anderson lacked his supervisor's approval to initiate detention. In fact, Ayers' initial complaint surmises that the officer who, along with Anderson, placed Ayers in handcuffs "may be the supervisor of PO Anderson." DN 1-1 at 1. Later, in his response to Defendants' first motion for summary judgment Ayers claimed Anderson "did not consult with a supervisor when P 'refused' the GS of home incarceration." DN 35 at 6. Contrary to this claim, the August 13, 2015 Violation Report with Graduated Sanctions includes a signature in the "Supervisor Signature" block above the following statement: "Supervisory Approval: I have reviewed and approved the above discretionary detention and/or deviation from sanctioning grid." DN 30-3.

7

probation, DN 22-1 at 11, (2) on July 10, 2015, when Anderson filed a Violation of Supervision Report, DN 22-1 at 6, (3) on August 13, 2015, when Anderson filed a Violation Report with Graduated Sanctions, DN 30-3 at 1, and (4) on September 15, 2015 when Anderson reported to probation, DN 59 at 2. Accordingly, 501 KAR 6:250 authorized Anderson to detain Ayers for up to ten days.

### b. KRS 439.3108

Ayers was independently authorized by KRS 439.3108 to detain Ayers. Kentucky Revised Statute 439.3108 plainly authorizes probation officers to detain non-compliant probationers for up to ten days "*[n]otwithstanding any administrative regulation or law to the contrary*…." KRS 439.3108 (emphasis added). "Any administrative regulation" includes 501 KAR 6:250. Therefore, even if Anderson did not follow the matrix of graduated sanctions found in 501 KAR 6:250, he was independently authorized by KRS 439.3108 to detain Ayers for up to ten days.

Ayers further argues Anderson could not detain him "even for an hour" because KRS 439.3108 granted Ayers the right to a pre-detention hearing. DN 35 at 5. However, Ayers did not have a right to a detention hearing prior to execution of the detainer on September 15, 2015 for two reasons. First, Ayers waived any right he may have had to a hearing when he signed the August 13, 2015 Violation Report below a statement containing the following sentence: "I understand the violations set forth above and I hereby state that I do not want and hereby waive my right to have a hearing." DN 30-3 at 1. Second, even if Ayers had not waived his right to a hearing, he had already received a hearing on February 20, 2015 before Judge Gibson. DN 30-2 at 1-3. Following that hearing, where Ayers was represented by counsel, Judge Gibson authorized Probation to impose graduated sanctions "pursuant to KRS 439.553." *Id*. Section 439.553

authorizes Probation to "impose graduated sanctions in accordance with KRS 439.3108"—sanctions that include detention for up to ten days.

Viewing the evidence in the light most favorable to Ayers, a rational juror could not find that his detainer was anything other than authorized by law. As Ayers' detention (the "gravamen" of his complaint) was legally authorized, Ayers' detention was not "cruel and unusual" within the meaning of the Eighth Amendment, and the Court will grant Defendants' motion for summary judgment on that claim.

### B. False Imprisonment

Ayers' false imprisonment claim is without merit. A plaintiff alleging false imprisonment must establish that his arrest was made without legal authority. *Smith v. Peyman*, 93 F. Supp. 3d 738, 751 (E.D. Ky. 2015). As the Court has already explained, Anderson was authorized to detain Ayers for up to ten days by 501 KAR 6:250, KRS 439.3108, and Judge Gibson's order. Accordingly, the Court will grant Defendants' motion for summary judgment on Ayers' false imprisonment claim.

### C. Extreme Emotional Distress

Ayers' emotional distress claim is without merit. In Kentucky, recovery for emotional distress is limited to "severe" or "serious" emotional injury and "a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment." *Osborne v. Keeney*, 399 S.W.3d 1, 17-18 (Ky. 2012). The record cannot support a finding that Ayers suffered "severe" or "serious" emotional injury. Furthermore, Ayers argument must fail because he has failed to present any "expert medical or scientific proof" to support his claim. Accordingly, the Court will grant Defendants' motion for summary judgment on Ayers' extreme emotional distress claim.

### D. Defamation Per Se

Ayers' defamation claim is without merit. In the record, we find only one fleeting mention of Ayers' defamation claim. DN 6 at 1 ("Said warrantless arrest and 10 days confinement did in fact have the desired affect on Plaintiff that Defendants intended: it caused Plaintiff to be Falsely Arrested, Falsely Imprisoned, Extreme Emotional Distress, *and Defamation Per Se*.") (emphasis added). To establish a claim for defamation, Ayers must prove the following elements: (1) Defendants used defamatory language, (2) about Plaintiff, (3) which was published, and (4) which caused injury to reputation. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004) (overruled on other grounds by *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014)). Ayers has failed to articulate any grounds by which a rational juror could find any of the above elements. As nothing in the record supports a finding of defamation, the Court will grant Defendants' motion for summary judgment on Ayers' defamation claim.

### E. Assault and Battery

Ayers alleges Defendants committed assault and battery when they "grab[bed] Plaintiff without his permission, and twisted his arms behind his back and placed hand-cuffs on his wrists, and pushed him down onto a chair causing him pain and humiliation." DN 1-1 at 1. Defendants have not moved for summary judgment on Ayers' assault and battery claims. Accordingly, this opinion and order do not dispose of those claims.

## V. Conclusion

For the reasons stated herein, a separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

January 14, 2020

                                        **Charles R. Simpson III, Senior Judge**
                                            **United States District Court**